**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DB Healthcare, LLC, et al., | No. CV-13-01558-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Blue Cross Blue Shield of Arizona Incorporated, | |
| Defendant. | |

Before the Court are Defendant's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Supporting Materials (Doc. 31), Plaintiffs' response (Doc. 39), Defendant's Reply (Doc. 41). Also before the Court are Plaintiffs' Notice of New Developments (Doc. 42), Defendant's response (Doc. 43), and Plaintiffs' supplemental brief (Doc. 46). The parties also presented oral argument on June 25, 2014. For the following reasons, Defendant's motion will be granted and Plaintiffs' Complaint will be dismissed.

**I.    BACKGROUND**

Defendant Blue Cross Blue Shield of Arizona is the insurer and administrator of employee health benefit plans. Some of the plans at issue are governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461; others are governed by ERISA's claims regulations as adopted and incorporated into them by the

Patient Protection and Affordable Care Act of 2010, Pub. L. No. 111-148, 124 Stat. 119, codified at 42 U.S.C. § 18091 and 26 U.S.C. § 5000A.  Doc. 1 at 2 ¶ 1.

Plaintiffs are Phoenix-area medical services facilities and ten nurse practitioners that they employ or employed.  Five of these nurse practitioners, Robert Alexander, Mary Melissa Hands, Teresa Meloche, Simran Sathi, and Victoria Tweedy, are current or former in-network providers of Blue Cross–administered healthcare.  These five nurse practitioners entered into provider agreements with Blue Cross.  The other five nurse practitioners, Crysty Frick, Joe Melby, Patricia Paradis, Sarah Quinn, and Allison Woodworth, are new hires at the facilities.  Blue Cross has not credentialed them.  "Credentialing involves reviewing qualifications and licensing and then admission into the [Blue Cross] provider network as a Provider.  Thereafter, [Blue Cross] patients can be seen and treated by the Nurse Practitioners and [have their] health plan claims and their invoicing submitted, to be paid at the [Blue Cross] network fee schedules rates."  Doc. 39 at 4 n.4.  Consequently, they are not party to any provider agreement with Blue Cross.

The provider nurse practitioners render healthcare to enrollees in Blue Cross–administered employee health benefit plans and file claims with Blue Cross for payment. Blue Cross then authorizes payments and remits them directly to the medical facilities at the providers' request.  Doc. 39 at 8; Doc. 31 at 5 n.6.  Among other contractual arrangements, providers agree not to seek payment from Blue Cross for "investigational" or "experimental" services, and Blue Cross retains the right to "adjust an adjudicated claim if [it] determines that the claim was incorrectly paid or denied" within one year of the date of the payment.[1]  Doc. 31-2 at 55.

The parties dispute whether the terms of the plans themselves also authorize Blue Cross to recoup reimbursements paid to providers in error.  *Compare* Doc. 1 at 5 ¶ 10

---

[1] Contrary to Plaintiffs' argument, the Court may look to the example provider agreement that Defendant has submitted with its motion to dismiss even under the 12(b)(6) standard.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  As detailed below, Plaintiffs' first claim for relief requests that the Court enjoin Blue Cross from terminating the provider agreements with the provider nurse practitioners and extend the provider agreements to the nonprovider nurse practitioners.  *See* Doc. 1 at 27 ¶¶ 93–94; Doc. 39 at 4 n.4.  Moreover, Plaintiffs do not dispute the authenticity of the provider agreement.

("[U]pon information and belief, the applicable ERISA-governed and PPACA-governed health plans at issue have no provisions and do not otherwise indicate that covered claims can somehow be subsequently converted into non-covered claims months or years after final benefit determination decisions have been made.") *with* Doc 31 at 8 (averring that all the plans included a "Payments Made in Error" section providing that Blue Cross could obtain reimbursement from the provider if it made a payment in error).[2]

Beginning in May 2011 the five provider nurse practitioners began filing claims for particular allergy tests—ALCAT cytotoxic laboratory tests—and attendant care. Although Blue Cross initially paid these claims, it subsequently reversed those claims determinations because the tests were "investigational" and thus excluded from coverage. Doc. 1 at 5 ¶¶ 8–9. Although Plaintiffs acknowledge a "purported" website identifying the subject allergy tests as "investigational," *see id.* at 5 ¶ 9, they allege the web posting was "at some publicly unannounced location and time" and that Blue Cross "never declared, decided, or communicated to anyone a belief or a coverage position that the tests or services were 'experimental' or 'investigational' during the time that it repeatedly, knowingly, and voluntarily paid for the tests and services." *Id.* Plaintiffs allege that Blue Cross's payments, totaling in the hundreds of claims, *see* Doc. 39 at 3, "acknowledg[ed] that both the tests and services were medically necessary and that the accounts billed and paid were proper." Doc. 1 at 5 ¶ 8.

In April 2012, Blue Cross informed the five provider nurse practitioners in writing that the claims had been paid in error and required repayment of the billing amounts totaling $237,000. Doc. 31 at 6. Plaintiffs allege that Blue Cross "reversed its prior benefits determination." Doc. 1 at 5 ¶ 9. Blue Cross asserts it had "discovered the improper billing." Doc. 31 at 6. Either way, Plaintiffs did not repay. Blue Cross viewed this as a breach of the provider nurse practitioners' contracts, refused to recredential them, threatened

---

[2] Blue Cross explicitly states, however, that their recoupment efforts were made pursuant to its rights under the provider agreements and not the plan language. Doc. 31 at 21. In addition to contesting the existence of this language in the relevant plans, *see* Doc. 39 at 19, Plaintiffs also assert that Blue Cross has not actually provided them with the plans. *Id.* at 25.

- 3 -

to terminate their provider agreements, and declined to credential the five nonprovider nurse practitioners "who were associated with the same practices." *Id.* at 2.

Plaintiffs allege that Blue Cross's "unilateral" reversal—via the repayment letters it sent the providers—violates ERISA. Doc. 1 at 6 ¶ 13. Specifically, Plaintiffs allege that the health plans at issue do not authorize Blue Cross's actions, that any provision of the health plans that purports to do so violates ERISA's claims regulations—which require that plan administrators like Blue Cross notify claimants of adverse benefit determinations within 30 days—and that any provision of the provider agreements that purports to do so is preempted by ERISA or otherwise invalid. *Id.* at 12–13 ¶¶ 42–49.

In their first claim, Plaintiffs allege that Blue Cross retaliated against them in violation of ERISA § 510. They seek an injunction to prevent Blue Cross from terminating existing provider agreements and to require Blue Cross to credential the five nonprovider nurse practitioners. ERISA § 510 prohibits retaliation against a participant or beneficiary who exercises rights guaranteed by a plan. *See* 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . ."). ERISA § 502(a) allows a civil suit to enforce § 510. 29 U.S.C. § 1132(a)(3) (allowing a participant, beneficiary, or fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan").

In addition to injunctive relief, ERISA § 502 allows for declaratory relief. 29 U.S.C. § 1132(a)(1)(B) (allowing a participant or beneficiary to bring a civil action "to clarify his rights to future benefits under the terms of the plan"). In their second claim, Plaintiffs seek declaratory relief that Blue Cross's recoupment attempts

(1) violate 29 U.S.C. § 1133 (requiring every employment benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits

under the plan has been denied," and to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review . . .");

    (2) violate ERISA's claims regulations;

    (3) are not authorized by any enforceable terms of the plans; and

    (4) are forfeited, waived, or estopped.

Doc. 1 at 28 ¶ 97. Plaintiffs further assert that Blue Cross cannot recover the funds because any recovery would be preempted by ERISA, limited to equitable remedies, and thus require tracing—which cannot be done.

Finally, Plaintiffs seek declaratory relief pursuant to the federal Declaratory Judgment Act that Blue Cross's actions breached the non-ERISA, contractual PPACA plans and their attendant duties of good faith and fair dealing, violated ERISA's claims regulations and waived its rights to all payment issues, and waived its rights under Arizona law by paying the subject claims. Although Plaintiffs refer to ERISA's claim regulations in their third claim for relief, they concede that it asserts causes of action under state law only. *See* Doc. 39 at 25.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the district court's subject matter jurisdiction. Plaintiffs' complaint asserts jurisdiction under 28 U.S.C. § 1331, which extends federal question jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." Where a defendant challenges subject matter jurisdiction, plaintiffs bear the burden of establishing its existence. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). Materials outside the pleadings may be considered to determine subject matter jurisdiction. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

## B.  Rule 12(b)(6)

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But the principle that a court accepts as true all the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.  ANALYSIS

### A.  Application of ERISA

Although Plaintiffs view this as an ERISA action, Blue Cross asserts that the complaint "is nothing more than an improper attempt . . . to manufacture federal question jurisdiction so as to avoid express contractual obligations." Doc. 31 at 2. It therefore challenges Plaintiffs' standing to enforce ERISA, the basis for Counts I and II.

"The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties . . . as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 (1983). As noted above, § 502(a)(3) empowers a "participant, beneficiary, or fiduciary" to bring a civil action to enforce ERISA. 29 U.S.C. § 1132(a)(3). Plaintiffs allege two grounds for ERISA standing: (1) they are ERISA 'beneficiaries,' and (2) they received assignments from their patients sufficient to enforce ERISA on their behalf.

### 1. Beneficiaries

ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Plaintiffs allege they are beneficiaries within the meaning of the statute because Blue Cross paid them—they thus received benefits under the terms of the plan. Doc. 1 at 14 ¶ 50; Doc. 39 at 8–9. Plaintiffs assert they received benefits both because the plans call for Blue Cross to reimburse them for services provided and because plan participants designated the providers to receive payment from Blue Cross. *See Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 661 (7th Cir. 2005) (ERISA creates "two distinct classes of individuals who might be 'beneficiaries': those designated by a participant and those who are . . . directly designated to receive benefits by the plan itself.").

Both arguments fail for the same reason. The term "beneficiary" does not properly denote a medical provider who receives reimbursement from a plan administrator. *See Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001) ("Healthcare providers . . . generally are not considered 'beneficiaries' or 'participants' under ERISA."). Although ERISA does not define them, the "benefits" it contemplates are fringe employment benefits like medical care—rather than simple payment for services—obtained by covered persons other than employee-participants, such as spouses and children. *See Cameron Manor, Inc. v. United Mine Workers of Am.*, 575 F. Supp. 1243, 1245 (W.D. Pa. 1983) ("'Beneficiary' in the context of the various provisions of ERISA carries the connotation of a person, other than the employee-participant, who is covered by the plan's provisions—e.g., a spouse or dependent."); *Hibernia Bank v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 411 F. Supp. 478, 489 (N.D. Cal. 1976) ("The benefits to which a beneficiary must be entitled are, in general, 'fringe benefits' such as medical disability and vacation payments."); *see also* Michael A. deFreitas, *Right of Provider of Health or Medical Services, as Assignee of Claim Under ERISA, to Maintain Action Against Plan Payor*, 133 A.L.R. Fed. 109 §1[a] n.1 (1996) ("'Beneficiary' means,

generally, a person designated by the participant (such as a family member) to be covered by the plan.").

Thus, healthcare providers do not become ERISA beneficiaries simply by receiving payment for services rendered to enrollees of an employment benefit plan. *See Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001) (declining to extend 'beneficiary' to include a healthcare provider and noting, "The fact that plaintiff may be entitled to payment from defendants as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing."). Indeed,

> the declared purpose of [ERISA] is to protect and educate those persons covered by such plans, and there is no indication that Congress intended by this statute to insure that health care facilities be paid. While Plaintiff may indeed be entitled to a "benefit" through operation of the plan—i.e., payment for services—we conclude that the term as employed in the statute does not permit of a construction broad enough to include a provider of health services to participants.

*Cameron Manor, Inc.*, 575 F. Supp. at 1245–46.

Moreover, "[b]eneficiary status depends on the terms of the plan; plans can limit those parties who are beneficiaries." Ronald J. Cooke, 3 *ERISA Practice and Procedure* § 8:17. Here, the terms of the plans themselves limit beneficiaries, consistent with the common ERISA meaning, to "individuals in whose name an insurance plan was issued or family members or dependents of such individuals." Doc. 41 at 5. That the plans call for payment to providers does not contradict this limiting language or expand it to encompass providers because payment does not constitute an ERISA "benefit". Indeed, once Plaintiffs' premise that payments are ERISA benefits is rejected, the plan language itself undermines their argument.

Plaintiffs' argument that they are ERISA beneficiaries is unpersuasive and contrary to the weight of authority. Although providers can sue as assignees, as discussed below, cases involving assignments do not support Plaintiffs' assertion that they are beneficiaries *absent* an assignment. *See City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 227–28 (1st Cir. 1998) (agreeing "that a health care provider, as the assignee of a beneficiary, acquires derivative standing and is able to sue as a 'beneficiary' by standing in

the shoes of his assignor" and concluding, "As the assignee of an ERISA beneficiary, City of Hope satisfies the standing requirements of section 1132 . . .") (quotation marks omitted); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991) ("Appellants alleged that they received a valid assignment of benefits. If the assignment of benefits did actually convey rights under the plan, appellants clearly would have had standing to sue under ERISA."); *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698 (7th Cir. 1991).

In *Kennedy* the Seventh Circuit used imprecise language in concluding that a healthcare provider had standing to sue her patient's insurer. *Kennedy*, 924 F.2d at 700 ("Myers, unquestionably a 'participant' as § 1002(7) uses that term, designated [the medical provider] as the person to receive her benefits. That makes [the provider] a 'beneficiary'."). But Plaintiffs' interpretation untethers *Kennedy*'s broad language from its facts. The healthcare provider sued the insurer as his patient's assignee. Confronting divergent approaches among the circuits, the court analyzed whether ERISA "supplies jurisdiction when a provider of medical services sues as assignee of a participant." *Id.*

Thus, courts inside and outside the Seventh Circuit properly interpret *Kennedy* to determine whether an assignee has standing given § 502(a)'s restrictive categories (participant, beneficiary, and fiduciary), not whether a healthcare provider may be a beneficiary in the absence of an assignment. *See Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1479 (9th Cir. 1991) ("Like the case at bar, the plaintiff health care provider in *Kennedy* sued under a waiver of co-payments and an assignment, where the plan had a non-assignment clause."); *Lutheran Gen. Hosp., Inc. v. Printing Indus. of Illinois/Indiana Employee Ben. Trust*, 24 F. Supp. 2d 846, 849 (N.D. Ill. 1998) ("[I]n *Kennedy v. Connecticut General Life Insurance Co.*, the Seventh Circuit established that assignees do, in fact, have standing to sue to recover benefits under ERISA.") (citation omitted); *see also* deFreitas, 133 A.L.R. Fed. 109 ("[I]n *Kennedy v Connecticut Gen. Life Ins. Co.*, the court held that a health care provider with an assignment of benefits from his patient could bring such an action against the health insurer in that case."). That decisions

1   like *City of Hope*, *Cromwell*, and *Kennedy* allow healthcare providers to sue as their
2   beneficiaries' assignees does not make those providers beneficiaries in the absence of
3   assignments.

4   Similarly, Plaintiffs cannot avail themselves by citing to cases interpreting
5   "beneficiary" to include recipients of *medical treatment* who did not fit a restrictive
6   definition of "employee." For example, *Peterson v. American Life & Health Insurance Co.*,
7   48 F.3d 404, 409 (9th Cir. 1995), also used broad language to define beneficiary:

> Peterson apparently would have us limit the definition of 'beneficiary' to persons such as spouses and dependents, designated by participants to receive benefits. We conclude, though, that any person designated to receive benefits from a policy that is part of an ERISA plan may bring a civil suit to enforce ERISA.

But there the Ninth Circuit was deciding whether a working owner (a partner) rather than an employee who received medical care (a quintuple coronary bypass surgery) had ERISA standing given that "[n]either an owner of a business nor a partner in a partnership can constitute an 'employee' for purposes of determining the existence of an ERISA plan." *Id.* at 407. Indeed, the court's chief concern was avoiding "the anomaly of requiring some insureds to pursue benefit claims under state law while requiring others covered by the identical policy to proceed under ERISA." *Id.* at 409. The critical question was simply whether someone who received medical treatment but was neither an employee nor an employee's family member could sue as a beneficiary. The court did not extend the definition of beneficiary to include healthcare providers, nor did it have an opportunity to decide whether the right to reimbursement constituted an ERISA benefit. *See also Ruttenberg*, 413 F.3d at 660–62 (determining that "a 'beneficiary' may be a person designated to receive benefits under a plan . . . and "is not limited to those who are designated as beneficiaries by a 'participant,'" in the context of deciding whether a nonemployee, independent commodity trader who received medical treatment could sue instead as a beneficiary because he received treatment under the terms of the plan itself though no plan participant had so designated him). These cases are inapposite.

1  Recently, a district court in Illinois adopted the expansive definition of beneficiary
2  Plaintiffs advocate here in an unpublished memorandum decision.  In *Pennsylvania*
3  *Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 09 C 5619, 2014 WL 1276585 (N.D.
4  Ill. Mar. 28, 2014), the court accepted Plaintiffs' premise that the right to receive payment
5  constitutes an ERISA "benefit".  *Id.* at * 7.  The court did not rely on a single case, let alone
6  one interpreting ERISA, to reach this conclusion.  Instead, it looked to references within
7  ERISA's definitions section "imply[ing] that, in the present circumstances at least, payment
8  of money is a 'benefit' under ERISA."  *Id.*  But the two ERISA provisions the court relied
9  on are both contained within the definition of employee *pension* plans rather than employee
10 welfare plans.  *Id.* (quoting 29 U.S.C. § 1002(2)).  Where the bargained-for good is a future
11 stream of money rather than healthcare, it is unsurprising that "benefits" would comprise the
12 right to receive payments.  As the authorities cited above make clear, this is not so for
13 employee welfare plans like those at issue here.  *Pennsylvania Chiropractic*'s conclusion
14 regarding "benefits" is incorrect and contrary to the weight of authority.  Indeed, it appears
15 to be the only case ever to reach this conclusion.

16  "Congress intended to limit the parties who could maintain actions pursuant to
17 section 502."  *Whitworth Bros. Storage Co. v. Cent. States, Se. & Sw. Areas Pension Fund*,
18 794 F.2d 221, 228 (6th Cir. 1986).  Indeed, "§ 502(a) itself demonstrates Congress' care in
19 delineating the universe of plaintiffs who may bring certain civil actions."  *Harris Trust &*
20 *Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 247 (2000).  A substantial body of
21 case law has developed, especially in the preemption context, evaluating the validity and
22 scope of assignments from beneficiaries to providers to determine the latter's standing to
23 enforce ERISA in disputes with plan administrators.  *Compare Misic v. Bldg. Serv. Emp.*
24 *Health & Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir. 1986) (per curiam) (concluding that
25 a healthcare provider's valid assignment from beneficiaries created standing to enforce
26 ERISA) *with Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045,
27 1047 (9th Cir. 1999) ("We conclude that the fact that these medical providers obtained
28 assignments of benefits from beneficiaries of ERISA-covered health care plans does not

convert their claims into claims for benefits under ERISA-covered health care plans."). That the courts of appeals, including the Ninth Circuit, allow medical providers to sue as assignees reflects the underlying assumption that providers are *not* beneficiaries. *See, e.g.*, *Hobbs*, 276 F.3d at 1241 ("Thus, while this court has allowed healthcare providers to use derivative standing to sue under ERISA, it has only done so when the healthcare provider had obtained a written assignment of claims from a patient who had standing to sue under ERISA as a 'beneficiary' or 'participant.'"). The assignee doctrine itself evidences that providers do not become beneficiaries simply by receiving the right to reimbursement. *See generally* Lee T. Polk, 2 *ERISA Practice and Litigation* § 11:21 (dividing beneficiaries into common categories including spouses, dependents, other family members, estates, independent contractors, and including medical providers only by virtue of valid assignments); Cooke, 3 *ERISA Practice and Procedure* §§ 8:17–18 (discussing standing of medical providers in the assignees chapter but not in the beneficiaries chapter). Plaintiffs are not beneficiaries. They may sue to enforce ERISA only with valid assignments.

### 2.  Assignees

Plaintiffs allege they can enforce ERISA because Blue Cross enrollees "assigned their rights to medical benefits to Plaintiffs through assignment of benefits forms." Doc. 1 at 14 ¶ 51. As the discussion above elucidates, healthcare providers like Plaintiffs may attain ERISA standing through a valid assignment from an enrollee. *See Davidowitz*, 946 F.2d at 1477; *Misic*, 789 F.2d 1374.

Plaintiffs allege that insureds under the health plans assigned their rights to the provider nurse practitioners and medical facilities via "assignment of benefits" forms, which instruct the insurer to pay the facilities. Doc. 39 at 11. They have offered five "samples of the forms executed by patients of Plaintiffs, designating payment of benefits and assigning rights and benefits to Plaintiffs." Doc. 35 at 2. Four of the five forms Plaintiffs submitted with their Response include the following print: "THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY." The other form authorizes

"assignment of your insurance rights and benefits directly to the provider for services rendered." Doc. 35-1 at 2–7. Four of the five are completely blank, however, and none of these sample forms contains any information identifying an enrollee or a provider nurse practitioner.[3] Indeed, Plaintiffs' accompanying declaration does not even indicate whether the unidentified "patients of Plaintiffs" were Blue Cross enrollees.

Plaintiffs' assertion that they have valid assignments is a legal conclusion that need not be accepted without supporting factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Aside from the blank forms, Plaintiffs have offered no specific factual allegations to support their conclusion that "[Blue Cross] Plan participants, and their spouses, dependents, and/or children treated by Plaintiffs additionally assign[ed] their rights to medical benefits to Plaintiffs through assignment of benefits forms, rendering Plaintiffs assignees of the patients/ERISA plan participants." Doc. 1 at 14 ¶ 51.

Blue Cross challenges Plaintiffs' pleading and additionally offers evidence that each of the plans at issue included a nonassignment clause:

> The benefits contained in this plan, and any right to reimbursement or payment arising out of such benefits, are not assignable or transferable, in whole or in part, in any manner or to any extent, to any person or entity. You shall not sell, assign, pledge, transfer or grant any interest in or to, these benefits or any right of reimbursement or payment arising out of these benefits, to any person or entity. Any such purported sale, assignment, pledge, transfer, or grant is not enforceable against [Blue Cross] and imposes no duty or obligation on [Blue Cross]. [Blue Cross] will not honor any such purported sale, assignment, pledge, transfer or grant.

Doc. 31-3 at 72. Further, although Plaintiffs dispute the existence of nonassignment clauses in at least some of the plans at issue, the example plan *Plaintiffs* submitted in support of their complaint includes the same nonassignment clause included above. *See* Doc. 35-2 at 66. This explicit nonassignment clause operates to defeat any purported assignment. *See Davidowitz*, 946 F.2d at 1481 ("ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan."); *see also City of Hope Nat. Med. Ctr.*,

---

[3] Notably, the provider facilities themselves produced these forms and their patients allegedly executed them. It is difficult to believe that Plaintiffs do not have copies and thus need discovery from Blue Cross to obtain them.

- 13 -

156 F.3d at 229 ("Consistent with the other circuits which have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."). Plaintiffs may not sue as assignees.

Because Plaintiffs do not have a valid assignment, their citation to preemption cases involving assignees does not compel a different conclusion. For example, in *Blue Cross of California*, 187 F.3d 1045, medical providers sued Blue Cross of California over fee disputes arising from their provider agreements. The providers sued in state court, and the insurer removed to the Northern District of California. The insurer also filed actions in the Central and Eastern Districts of California to compel arbitration. The court in the Northern District remanded for lack of subject matter jurisdiction, and the two other courts granted the plaintiffs' motions to dismiss for lack of subject matter jurisdiction. In a consolidated opinion, the Ninth Circuit affirmed each of the district courts' orders.

In all three actions, the insurer argued that the providers' claims were "preempted by ERISA, which thereby provides a basis for subject matter jurisdiction, because they fall within ERISA's civil enforcement provision, § 502(a), and express preemption clause, § 514(a)." *Id.* at 1050 (citations omitted); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) ("[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."). Specifically, the insurer posited that the providers' "right to receive reimbursement from Blue Cross depends upon the assignment of the right to benefits for payment for medical services from their patients, some of whom are beneficiaries of ERISA-covered health plans, and therefore that the Providers' claims regarding the fee provisions in their provider agreements are claims for benefits under the terms of ERISA benefit plans and fall within § 502(a)(1)(B)." *Blue Cross of Cal.*, 187 F.3d at 1050.

1 The Ninth Circuit disagreed. Unlike cases in which providers-assignees sought reimbursement owed to patients-assignors under the terms of their employee health benefit plans, *see, e.g.*, *Misic*, 789 F.2d 1374, the *Blue Cross of California* plaintiffs argued that the insurer breached the terms of their provider agreements. The court held "that the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within § 502(a)(1)(B)." 187 F.3d at 1050.

The court elaborated: "the Providers are asserting contractual breaches, and related violations of the implied duty of good faith and fair dealing, that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the Providers and Blue Cross. The dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the Providers, but the amount, or level, of payment, which depends on the terms of the provider agreements." *Id.* at 1051.

Here, Plaintiffs characterize their dispute with Blue Cross as contesting a "right to payment" under ERISA plans, which is preempted, rather than contesting the "amount of payment" due under the provider agreements, which is not. Doc. 39 at 15–16. According to them, "This is a classic 'right to payment dispute', implicating the ERISA plans and their coverage, thus requiring preemption." *Id.* at 16.

But a central premise of *Blue Cross of California* forecloses this argument: the existence of valid assignments. Had the Ninth Circuit determined that the providers asserted a right to payment rather than challenged the amount of payment—and thus that the dispute depended on the terms of ERISA plans rather than the terms of the provider agreements—the providers' standing to enforce § 502(a) still would have depended on their valid assignments. That is why the insurer in *Blue Cross of California* believed that *Misic*, 789 F.2d 1374, which "affirmed the principle that ERISA preempts the state law claims of a provider suing as an assignee of a beneficiary's rights to benefits under an ERISA plan," *Blue Cross of Cal.*, 187 F.3d at 1051 (quoting *The Meadows v. Emp'rs Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995)), compelled a favorable outcome. And it is why Plaintiffs'

- 15 -

reliance on *Blue Cross of California* and other preemption cases involving valid assignments is unavailing. *See also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 329–30 (2d Cir. 2011) (valid assignment); *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1353 (11th Cir. 2009) (valid assignment). Because there is no valid assignment, the Court need not decide whether this is a right-to-payment or amount-of-payment dispute.

Finally, Plaintiffs' argue that the nonassignment clauses are inconsistent with Blue Cross reimbursing the providers and thus that the clauses are ineffective or invalid. This is also without merit. That Blue Cross prevents enrollees from unilaterally assigning rights under their plans is not inconsistent with tripartite agreements allowing direct payment to providers as a courtesy to patients. Moreover, as discussed above, those direct payments to providers are not the kind of ERISA "benefits" that can make them § 502(a) beneficiaries. Thus, nonassignment clauses preventing insureds from unilaterally assigning benefits are not inconsistent with Blue Cross agreeing with providers and enrollees to reimburse the former directly.

In sum, Plaintiffs are neither beneficiaries nor assignees. They lack statutory standing to enforce ERISA. Although Defendant has moved to dismiss the complaint both for lack of subject matter jurisdiction and for failure to state a claim, the Court will dismiss Counts I and II on the merits rather than for lack of jurisdiction. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 978 (9th Cir. 2012) ("Because Leeson's ERISA claim rises and falls on the district court's determination of participant status, the construction of the term 'participant' involves a merits-based determination, even if it results in a dismissal."); *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) ("[A] dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction."). Because a district court, in its discretion, may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction, 28 U.S.C.

§ 1367(c)(3), Count III will also be dismissed, particularly given Plaintiffs' concern that it presents "potentially unripe issues." Doc. 39 at 25.

### C. Leave to amend

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it "need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). At oral argument, counsel conceded he could add factual allegations only to Count III. Because this could not cure the defects in Plaintiffs' federal claims, amendment would be futile. Leave to amend will be denied.

### D. What this motion is, and is not, about

The scope of this lawsuit deserves note. At oral argument, the parties clarified that this case does not directly affect the rights or medical benefits of Blue Cross enrollees who seek treatment from Plaintiffs. No insured has been denied an ALCAT test. The providers no longer offer it, and insureds are no longer pursuing it. If insureds did want it, this litigation in no way affects the rights of patients to file ERISA actions to protect their interests. Moreover, the provider agreements preclude Plaintiffs from recovering payments from insureds. On receipt of Blue Cross's recoupment demand, Plaintiffs may not collect the $237,000 from their patients. That the rights of insureds and their families are not at risk reinforces the inapplicability of ERISA. After all, Congress enacted ERISA "to protect the economic security of American *employees* by regulating employer-sponsored pension and welfare plans." Peter K. Stris & Victor O'Connell, *ERISA & Equity*, 29 ABA J. Lab. & Emp. L. 125 (2013) (emphasis added); *see also* 29 U.S.C. § 1001 (congressional finding "that the continued well-being and security of millions of employees and their dependents are directly affected by these [employee benefit] plans"). Allowing Plaintiffs to litigate a contractual dispute in federal court under ERISA auspices is not "necessary to further the

statute's purposes." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 (1983).

Thus, this action cannot affect the rights of insureds under the terms of their insurance plans. Instead, it will determine the contractual rights and obligations of two commercial entities. In that respect, in fact, this motion is dispositive. Blue Cross does not dispute that it sought recoupment beyond the 30-day limit imposed by ERISA's claim regulations. If ERISA governed this commercial dispute rather than ordinary contract law, the 30-day limit ends the story. The litigation would not reach the underlying merits: whether ALCAT cytotoxic laboratory tests are excluded investigational treatment. In contrast, because ERISA does not apply, the parties may choose to litigate the compensability of ALCAT tests in state court.[4] The practical consequence is that nonassignment clauses empower two commercial entities to contractually preclude providers from coming within § 502(a)'s province. But that is entirely reasonable because § 502(a) "does not purport to reach every question relating to plans covered by ERISA." *Franchise Tax Bd.*, 463 U.S. at 25. Indeed, *this* dispute exemplifies why insurance companies and healthcare providers might opt out—sometimes their disputes are simply too attenuated from ERISA's purposes.

This Order is therefore narrow in two respects: it does not affect any Blue Cross enrollees or patients, and it does not determine the legality of Blue Cross's attempt to recoup payments for the ALCAT tests. Ultimately, it may be that Blue Cross reimbursed Plaintiffs sufficiently to supply the latter with an effective forfeiture, waiver, or estoppel defense to any breach of contract action Blue Cross might one day pursue. But as alleged, Plaintiffs have not established that they are members of the class Congress intended ERISA to protect, nor that they have the valid assignment necessary to enforce it.

---

[4] The Court expresses no opinion as to whether the dispute may be subject to arbitration.

IT IS THEREFORE ORDERED granting Defendant's Motion to Dismiss (Doc. 31). Counts I and II are dismissed for failure to state a claim. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) and so also dismisses Count III.

IT IS FURTHER ORDERED that the Clerk shall enter judgment dismissing Counts I and II of this action with prejudice and dismissing Count III for lack of jurisdiction. The clerk shall terminate this case.

Dated this 8th day of July, 2014.

_____
Neil V. Wake
United States District Judge